## HELLAMS v. SWITZER.

1. In what cases several causes of action may be united in one complaint, and the remedy for failing to state them separately, considered.
2. Where several plaintiffs, severally owning adjacent tracts of land, join in one action for injuries to their land caused by a dam of the defendant, and claiming damages *in solido*, the cause of action is single, and a demurrer upon the ground of misjoinder of causes of action will not lie.
3. But the injuries being separate and distinct, the plaintiffs could not jointly sue to recover damages therefor; and a demurrer, interposed orally at the hearing, that the complaint did not state facts sufficient to constitute a cause of action, was properly sustained.
4. A civil action will not lie to recover damages for injuries caused by a dam, unless special damage to plaintiff be alleged in the complaint; for a public nuisance the only remedy is by indictment.
5. An action for damages on account of a private nuisance and to abate

the same is a legal, not an equitable, action. A prayer for equitable relief does not change the nature of the action.

6. The joinder of parties under sections 138 and 140 of the code of procedure considered.

Before PRESSLEY, J., Laurens, December, 1884.

This action was commenced August 11, 1884. The opinion fully states the case.

*Messrs. Holmes & Simpson*, for plaintiffs.

*Messrs. Ferguson & Young*, contra.

November 30, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to abate an alleged nuisance and for damages against the defendant Switzer for erecting on his land immediately below and adjoining the lands of the first named plaintiff a dam across a stream known as North Raburn Creek, in Laurens County. The plaintiffs, R. Y. and P. M. Hellams, as tenants in common, owned one tract of land immediately above the land of the defendant, and each of the other nine plaintiffs, viz., W. L. Hopkins, J. R. Brownlee, G. W. Anderson, J. R. Childress, D. D. Harris, Hannah Babb, William Hellams, L. R. Babb, and Gideon Yeargin, owns a separate and distinct parcel of land on the creek above the aforesaid dam, and none of them has any interest in the lands of either of the others named.

The plaintiffs all unite in one complaint and in stating one cause of action as follows: "III. That the defendant, John R. Switzer, has recently, against the wishes and the solemn protest of these plaintiffs and manifold other citizens of the community surrounding these farms, erected upon his lands immediately below and joining the lands of the first plaintiffs, R. Y. and P. M. Hellams and W. L. Hopkins, a considerable dam across the body of the said North Raburn Creek, and thereby has and is obstructing the flow and the necessary drainage of the said lands by means of the channel of the said creek, causing the said channel

to fill up with sand and other rubbish above the said dam and along through the lands of these plaintiffs so as to materially injure the lands of these plaintiffs and render them useless for agricultural purposes. IV. That these plaintiffs are damaged by the said overflow of water and sand upon their land and the obstruction of their proper drainage, by reason of the said dam erected by the said defendant, in the sum of five thousand dollars. V. These plaintiffs further allege that the said dam, obstructing the water of the said creek and causing it to spread out over so much land in and above the pond, is the cause of chills, fevers, and other malarial diseases in the country around, and makes it dangerous for their families to remain upon the premises, and that the said dam is a source of inestimable injury and damage to these plaintiffs; that said dam is a nuisance, hurtful and injurious to the health of the families and tenants of these plaintiffs, and a great damage to other property," &c. And the said plaintiffs pray that the aforesaid nuisance may be abated; that the said defendant be required to remove the said dam forthwith, and all other obstacles placed by him in said creek, and for a perpetual injunction, and for $5,000 damages, &c.

The defendant demurred to the complaint upon the ground "that several causes of action were improperly united in this, that it appears upon the face of the complaint that the several plaintiffs are owners of separate and distinct tracts of land, and that one plaintiff has no interest in the lands of the others," &c. On the trial of the cause, the defendant interposed the further oral demurrer "that the complaint does not state facts sufficient to constitute a cause of action."

On hearing the cause, Judge Pressley passed the following order: "It is ordered and adjudged, that the first ground of demurrer be overruled. It is further ordered and adjudged, that the second ground of demurrer be sustained, with leave to the plaintiffs to amend their complaint if they desire to do so."

The plaintiffs and defendant both appeal—the plaintiffs on the ground that his honor erred in holding that the complaint did not state facts sufficient to constitute a cause of action; the defendant on the ground that his honor erred in overruling the

written demurrer of the defendant, and in not holding that several causes of action had been improperly united.

First. As to the alleged misjoinder of several causes of action. There is no doubt that there may be more than one cause of action in a complaint. Indeed, under the reformed procedure there may be causes of action either legal or equitable, or both, and to any number; but they must be harmonious. The code prescribes the character of those which may be thus united in the same complaint. Section 188 declares that "the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all arise out of (1) the same transaction or transactions connected with the same subject of action; or (2) contract express or implied; or (3) injuries with or without force to person and property, or either, &c. * * * But the causes of action must all belong to one of these classes, and, except in actions for the foreclosure of mortgages, must affect all the parties to the action, and not require different places of trial, and must be separately stated," &c.

These provisions plainly indicate that there is a limit to this authorized union; and when the complaint contains more than one cause of action, the very important question may arise whether they are of such a character as may be joined in the same action. But, of course, there must be more than one cause of action stated in the complaint before that question can arise; and to be a cause of action, the matter must be stated separately—"that is, each must be set forth in a separate and distinct division of the complaint, in such manner that each of these divisions might, if taken alone, be the subject of an independent action." *Pom. Rem.,* § 442; *Hammond* v. *Railroad Company,* 15 *S. C.,* 10. If the plaintiff endeavors to state more than one cause of action, and merely fails to give them, in form and manner, distinct and separate existence, it is considered a vice in pleading; but the remedy is not by demurrer, but by notice to make the pleadings more definite and certain by separating and distinctly stating the different causes of action. *Pom. Rem.,* § 447.

Now, as to this case, are there two or more causes of action

stated, or attempted to be stated, in the complaint? It seems to us not. True, there are several plaintiffs, each of whom owns a particular tract of land, without having anything in common with the other plaintiffs, other than alleged injury to health and property arising from the same cause. There is no effort to give any one of these plaintiffs a separate and distinct cause of action, alleging injury to himself, and stating the amount of damage done to him separately. On the contrary, while the complaint does state the separate ownership of the different parcels of land, it is all done jointly in the same paragraph or division, stating one single cause of action, as if they were tenants in common of the different tracts, and claiming for all together damages *in solido*, to the extent of five thousand dollars, without indicating what part of the common damage was the share of the plaintiffs respectively. The plaintiffs having made no effort to state, perfectly or imperfectly, several causes of action, but all having joined in one, it seems to us that this is not a case for the application of the rules which govern the joinder of actions, but rather of those which apply to the joinder of parties. If so, the written demurrer of the defendant complaining of a misjoinder of causes of action does not reach the point which the defendant manifestly intended to make, in reference to the separate ownership of the lands by the different plaintiffs in the united action. Whether the several plaintiffs, owning the different parcels of land claimed to be damaged, could be united in one joint action, is a different question, which we will now proceed to consider.

Second. Did the complaint state facts sufficient to constitute a cause of action? We have just seen that it did not undertake to state more than one cause of action, and the question now is, whether that one was properly and legally stated, and, as we indicated before, that must be determined with reference to the law as to the joinder of plaintiffs.

In order to have a clear view of the principles involved, it will be proper to settle one or two preliminary points. So far as these plaintiffs are concerned, the alleged nuisance must be considered as private in its character, for, if a public nuisance, the only proper remedy was by indictment, unless in addition to the public offence they had alleged special damage to themselves,

which they did not do. *McLaughlin* v. *Railroad Company,* 5 *Rich.,* 583; *State* v. *Rankin,* 3 *S. C.,* 447.

The action being for damages on account of a private nuisance and to abate the same, must be considered to be an action at law, such as, under the old procedure, would have been called "an action on the case." It is true that the code has destroyed the distinction between actions at law and suits in equity, and abolished the forms of action requiring that there shall be but one form of action for the enforcement of private rights; but the code did not undertake to destroy the inherent differences between legal and equitable rights, or to affect the primary right or the remedies, which the municipal law creates and confers. The mere formal differences between actions are abolished, while the substantial differences remain as before. The facts determine the nature of the action as being legal or equitable. The complaint does pray not only legal but equitable relief as by injunction, &c., but it will not be forgotten that one of the standing admonitions of text writers upon the codes is, not to confound the cause of action with the nature of the relief sought. They have no necessary connection. The question of nuisance or no nuisance is legal in its character, which the defendant has the right to have passed upon by a jury. In fact, as a general rule, an original action will not lie on the equity side of the court to enjoin a nuisance, unless the matter complained of is itself a nuisance *per se.* "When the thing sought to be restrained is not in itself noxious, but only something which may, according to circumstances, prove to be so, the Court of Equity will refuse to interfere until the matter has been decided at law by an action." See *Kennerty* v. *Etiwan Phosphate Co.,* 17 *S. C.,* 411.

Being, then, an action at law, it is perfectly plain that, according to the old procedure, it would be a misjoinder to unite in one action two or more plaintiffs, having separate and distinct rights in parcels of land claimed to be injured by the same cause. Mr. Pomeroy says: "The requirements of the common law rules that all persons jointly interested shall unite as plaintiffs in any action brought to maintain the interest, and that in the case of a several right, each separate holder of it should sue alone, was very peremptory, and upon these were based the form, extent, and even

possibility of the judgment to be rendered. * * * Persons jointly entitled, or having a joint legal interest in the property or other rights affected by a *tort*, must join in actions brought to recover damages therefor. On the other hand, when the interest and right and the damages are both several, each person who has suffered the wrong must sue separately. In accordance with this principle, two or more plaintiffs cannot in general sue for *torts* to the person or character, such as assaults, libels, slander, and the like," &c. *Pom. Rem.*, §§ 184, 189.

But the code has changed in some respects the modes of procedure, and the question now is, whether it has so changed the law in relation to parties, as to allow a number of plaintiffs, having no interest in common, but separate and distinct rights, to unite in one action for damages in bulk, to their respective rights of person and property, alleged to proceed from the same cause. A careful examination of the code will disclose the fact that it does not in terms repeal the old law as to parties, which, as we suppose, is still the law wherever it has not been superseded or repealed by necessary implication. The question is really one of construction as to how far the code has abrogated or modified the old rule upon the subject. Section 138 provides that, "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this title." And section 140 declares, "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any one, who should have been joined as plaintiff, cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest of many persons, or where the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole," &c.

These provisions are certainly very vague and indefinite. The object, doubtless, was to simplify the procedure, but it seems to us that, in this instance at least, it was not attained. There is certainly upon this point as much confusion and obscurity now as before the adoption of the code. These sections of our code are substantially the same as those of the code of New York, and,

indeed, of most of the States, which have adopted the reformed procedure. We might, therefore, have expected to find some uniformity in the decisions, but such is not the case. No parts of the codes have excited more discussion or difference of opinion in the courts. These provisions as to parties were manifestly modelled upon the old practice in equity, which, from the nature of its issues and especially the mode of trial, was flexible, allowing the chancellor to decide the rights of all parties whether they were before him as plaintiffs or defendants; and, therefore, while it was important to have all the parties in interest before the court, it was not considered necessary to distinguish nicely as to the nature and extent of their interest, or whether they were plaintiffs or defendants. For this reason, probably, it was soon found that there was no serious difficulty in applying the new rules of the code to proceedings which were purely equitable in their character and prayed only equitable relief. And it will be observed that the section from Pomeroy (269), cited by the plaintiffs as authority for the joinder in this case, is found under the head of parties "plaintiff in equitable actions."

But great difficulty arose in the application of the code rules taken from equity to law cases for enforcing legal rights, in which the decision is not by the chancellor, but by the jury, with less liberty of action and without the power to apportion damages among joint plaintiffs. See *Bannister* v. *Bull*, 16 *S. C.*, 230. This difficulty was felt from the beginning, and at least three States (Ohio, Indiana, and Wisconsin) still hold that the provisions of the code as to parties were not intended to apply to law cases, involving rights purely legal, but only to continue the same practice which had prevailed before, in proceedings equitable in their nature, after the code prescribed one form of action for all alike. *Pom. Rem.*, §§ 213 and 215. But the code does not make any such exception, and it seems that in conformity with its terms the weight of authority is in favor of applying the provisions, so far as practicable, to all actions alike, legal as well as equitable.

It does not, however, follow that the rules of the code abolish entirely the common law requirements in actions strictly legal. "It must be observed, in this connection, that in a vast number

of actions strictly legal the equitable theory of parties, as stated in these clauses, would determine the proper parties thereto, in exactly the same manner as the common law theory." *Pom. Rem.*, § 122. This is certainly not a case under the "common or general interest" clause, in which one or more might sue for the benefit of all. *Warren* v. *Raymond*, 17 *S. C.*, 204. It is a case in which the inquiry is, whether all the plaintiffs have such "an interest in the subject of the action and in the relief demanded" as authorize them to unite in a joint action for joint damages and to abate the alleged nuisance.

Without going into the learning upon the subject, or endeavoring to reconcile the conflicting decisions, it will be sufficient for the purposes of this case to quote the rule as laid down by Mr. Pomeroy, the greatest expounder of the codes and an enthusiastic defender of its principles and procedure. In reference to actions by persons having several rights arising from personal *torts*, he says: "Where a personal *tort* has been done to a number of individuals, but no joint injury has been suffered and no joint damages sustained in consequence thereof, the interest and right are necessarily several, and each of the injured parties must maintain a separate action for his own personal redress. It follows, therefore, that when a *tort* of a personal nature, an assault and battery, a false imprisonment, a libel, a slander, a malicious prosecution, and the like [nuisance, we suppose] is committed upon one or more, the right of action must, except in a very few special cases, be several. In order that a joint action may be possible, there must be some prior bond of legal union between the persons injured, such as a partnership relation, of such nature that the *tort* interferes with it, and by virtue of that very interference produces a wrong and consequent damage common to all. * * * The doctrine above stated has been fully recognized and asserted by the courts since the codes were enacted. A fire company, a voluntary association, having been libelled, a joint action by its members to recover damages against the libeller was held improper; not being partners, and not having any community of legal interest whereby they could suffer a common wrong, the right of action was several and each must sue alone. The same rule has been applied in the case of two or more persons, not partners,

suing jointly to recover damages for a malicious prosecution; the action cannot be maintained." *Pom. Rem.*, § 231; *Giraud* v. *Beach*, 3 *E. D. Smith*, 337; *Hinkle* v. *Davenport*, 38 *Iowa*, 355; *Stepanck* v. *Kula,* 36 *Id.*, 563; *Rhoads* v. *Booth*, 14 *Id.*, 576.

In the last case cited, three plaintiffs sued jointly for a malicious prosecution. Wright, justice, said: "As a rule, it is only when two or more persons are entitled to, or have a joint interest in, the property affected, or to the damages to be recovered, that they can unite in an action. Therefore, several parties cannot sue jointly for injuries to the person, as for slander or battery or false imprisonment. For words spoken of parties in their joint trade, or for slander of title, they may sue jointly; but not so when two or more sue for slanderous words which, though spoken of all, apply to them all separately; or in a case of false imprisonment or a malicious prosecution, when each, as individuals, are imprisoned or prosecuted. The principle underlying is, that it is not the act, but the consequences, which are looked at. Thus, if two persons are injured by the same stroke, the act is one, but it is the consequences of that act, and not the act itself, which is redressed; and, therefore, the injury is several. There cannot be a joint action, because one does not share in the suffering of the other." The court further held that the objection might be taken at the trial.

The judgment of this court is, that the judgment of the Circuit Court be affirmed; that the plaintiffs may amend by striking out all the plaintiffs but one, or otherwise, if so advised.